In re **SURPLUS FURNITURE LIQUIDATORS, INC. OF HIGH POINT, d/b/a Furniture From High Point, Debtor.**

**Bankruptcy No. 95–11506C–7G.**

United States Bankruptcy Court,
M.D. North Carolina,
Greensboro Division.

Oct. 18, 1995.

Kathy Vest, pro se.

Karen Vestal, pro se.

Tamara Barrvecchia, pro se.

Marion G. Follin, III, Greensboro, NC, for Leigh Dutton.

Warren R. Lackey, High Point, NC, for debtor.

William P. Miller, Alan B. Powell, High Point, NC, for High Point Bank.

### MEMORANDUM OPINION

WILLIAM L. STOCKS, Chief Judge.

Debtor filed a motion in this case seeking court approval of the sale by Debtor of certain furniture inventory in the possession of Debtor and High Point Bank & Trust Company ("High Point Bank"). Debtor seeks to sell the furniture inventory and to transfer liens to proceeds. Objections to the proposed sale were filed by various customers of Debtor who had paid for furniture which was still in the possession of Debtor when this case was filed. The customers who filed objections include Leigh Dutton, Kathy Vest, Karen Vestal and Tamara Barrvecchia (the "objecting customers"). The essence of the objections is that Debtor does not own the furniture which these customers have paid for and is not entitled to sell that furniture. Instead, the objecting customers maintain that they are entitled to recover possession of the furniture from Debtor. This case came before the court on August 29, 1995, for hearing upon these objections. Having considered the evidence offered by the parties, the arguments of counsel and the authorities submitted by the parties following the hear-

ing, the court finds that the objections filed by the customers must be overruled and denied and the Debtor permitted to sell the furniture claimed by the objecting customers free and clear of liens. The findings and conclusions of the court pursuant to Bankruptcy Rule 7052 are set forth below.

## FACTS

Prior to June of 1995 Debtor was engaged in the retail furniture business. Debtor had a place of business and showroom on Main Street in High Point, North Carolina, and in Raleigh, North Carolina. Debtor promoted itself as offering furniture to the general public at discount prices. Debtor's showrooms were open to the general public prior to June of 1995 and Debtor maintained an inventory of furniture in its showrooms which was on display and offered for sale to customers who visited Debtor's showrooms. Some items of furniture were sold off the showroom floor to customers and in some instances Debtor ordered furniture for its customers from the manufacturer of the furniture selected by the customer. In its furniture sales, including the transactions involving the objecting customers, Debtor utilized a printed form which was filled out when customers purchased or ordered furniture from Debtor. This form was entitled "Sales Order" and set forth certain "Terms and Conditions of Sale" which appear on the back of the form. One of the terms on the back of the form is entitled "Delivery by Authorized Carrier" and provides that upon completion of the order "we will schedule your merchandise on the next available truck to your area.... Drivers will place your furniture in your home." The form further provides that if the furniture is damaged in transit Debtor is to repair or replace the furniture without expense to the customer.

Prior to any of the transactions involving the objecting customers, Debtor obtained several loans from High Point Bank. In connection with obtaining these loans Debtor executed loan documents purporting to give High Point Bank a security interest in Debtor's assets. Under the loan documents from Debtor, High Point Bank claims a first lien upon most of Debtor's assets, including Debtor's entire inventory.

During the first week in June of 1995, following a default by Debtor with respect to its loans, High Point Bank took control over all of the inventory located at Debtor's locations in High Point, including the furniture claimed by the objecting customers. Shortly thereafter, this bankruptcy case was filed.

Although the objecting customers selected and paid for their furniture at different times, the facts surrounding each purchase are essentially the same. In each instance, the objecting customer selected one or more items of furniture at Debtor's showroom and paid for the furniture. In each instance, Debtor "tagged" the furniture as having been sold to the objecting customer. However, Debtor also retained possession of the furniture in each instance in order to either deliver the furniture to the customer locally or to ship the furniture to the customer by common carrier in those instances in which the customer's residence was not located close by. At the time that High Point Bank took possession of Debtor's inventory, the furniture "purchased" by the objecting customers was still being held by Debtor awaiting delivery to the customers by Debtor or by a carrier selected by Debtor. The furniture which is the subject of the objections now before the court is readily available from other sources in North Carolina.

## LEGAL CONCLUSIONS AND DISCUSSION

Section 363(b)(1) of the Bankruptcy Code gives the Trustee the authority to sell property of the estate after notice and a hearing. Property of the estate includes "all legal or equitable interests of the Debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The first point of disagreement between the parties is whether the furniture in question is property in which Debtor had an equitable or legal interest. Debtor argues that it held legal title to the furniture at the time of the filing of the petition and that the furniture is property of the estate.

1. *Status of the title to the furniture.*

■ Each of the transactions involving Debtor and the objecting customers was a transaction in goods governed by Article 2 of

the Uniform Commercial Code. *See* N.C.Gen.Stat. § 25–2–102. The question of who holds title to the furniture, and therefore the question of whether title to the furniture is included as property of Debtor's estate, is controlled by N.C.Gen.Stat. § 25–2–401. Because the objecting customers and Debtor had no agreement as to the passage of title to the furniture, "title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods ... and in particular ... if the contract requires delivery at destination, title passes on tender there." N.C.Gen.Stat. § 25–2–401(2). The contracts in this case require Debtor to deliver the furniture in the buyers' homes, therefore title to the furniture would pass from Debtor to the customers on tender of the furniture to the customers in their homes. Because the furniture remained in Debtor's possession and had not been tendered to the objecting customers in their homes when this case was filed, Debtor retained title to the furniture. Thus, Debtor had legal title and possession of the furniture. Under the sales contract the entire risk of loss or damage to the property was upon Debtor. If the furniture had been destroyed by fire or other hazard or lost or damaged in transit Debtor was obligated to repair or replace the furniture. Therefore, at the time that this case was filed legal title and ownership of the furniture was vested in Debtor and the furniture constitutes property of the estate of Debtor within the meaning of § 541(a)(1).

### 2. *Existence of a "special property" in the furniture.*

■ The objecting customers assert that they have a "special property" in the furniture under N.C.Gen.Stat. § 25–2–501. While this may be correct, it does not follow necessarily that they are entitled to possession of the furniture. By virtue of N.C.Gen.Stat. § 25–2–501(1), "[t]he buyer obtains a special property ... in goods by identification of existing goods as goods to which the contract refers.... Such identification can be made at any time and in any manner explicitly agreed to by the parties." Pursuant to the agreements between the parties, the furniture which the objecting customers seek to recover was tagged and identified as theirs by Debtor at the time they paid for it or soon afterwards. Therefore, the goods are identified and each of the objecting customers has a special property in the furniture which they claim.[1]

■ The significance of a buyer having a special property in goods in the possession of a seller derives from N.C.Gen.Stat. § 25–2–502 and § 25–2–716(3). N.C.Gen.Stat. § 25–2–502 provides in pertinent part that "a buyer who has paid ... all of the price of goods in which he has a special property ... may ... recover them from the seller if the seller becomes insolvent within ten days after receipt of the first installment on their price." N.C.Gen.Stat. § 25–2–502(1).[2] The only objecting customer who has sought to invoke this provision is Leigh Dutton, who delivered her check for the furniture to Debtor on June 3, 1995, which check was honored by her bank on June 8, 1995. Ms. Dutton argues that, because High Point Bank took possession of Debtor's inventory on June 7, 1995, it should be inferred that Debtor stopped paying its debts in the ordinary course of business on June 7 and hence became insolvent on that date—which was within ten days after receipt of her check by Debtor. The requirement for relief under § 25–2–502 is that the seller *become* insolvent within ten days. While the evidence

---

1. Even if the parties had not agreed that the furniture would be identified by tagging it with the customer's name because the contracts between the parties were for the sale of goods already existing and identified, identification would have occurred when the contracts were made. N.C.Gen.Stat. § 25–2–501(1)(a). In any event, the goods are identified and the objecting creditors have a special property in the furniture at this time.

2. N.C.Gen.Stat. § 25–1–201(23) states: "A person is 'insolvent' who either has ceased to pay his debts in the ordinary course of business or

cannot pay his debts as they become due or is insolvent within the meaning of the Federal Bankruptcy Law." Insolvent is defined in pertinent part under the Bankruptcy Code as a "financial condition such that the sum of [an] entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—(i) property transferred, concealed, or removed with the intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of [the Bankruptcy Code]." 11 U.S.C. § 101(32).

may have been sufficient to support an inference that after June 7, 1995, Debtor was unable to pay its debts in the ordinary course of business, it was not sufficient to support a reasonable inference that Debtor *first* became unable to do so on June 7, 1995. Ms. Dutton offered no evidence as to whether Debtor had been paying its debts in the ordinary course of business before High Point Bank took possession of Debtor's assets on June 7, 1995, or whether Debtor's debts exceeded its property prior to Ms. Dutton's payment. To the contrary, the evidence as a whole suggested that Debtor had encountered serious cash flow problems several months before June 7, 1995, and, in fact, had been forced to bring in an outside firm at that time in an attempt to liquidate Debtor's inventory. In short, while Debtor may have ceased paying its debts in the ordinary course of business before June 7, 1995, and was therefore insolvent on that date under the Uniform Commercial Code definition, Ms. Dutton failed to prove, as required by N.C.Gen.Stat. § 25–2–502, that Debtor *became* insolvent within ten days after either June 3 or June 8, 1995. N.C.Gen.Stat. § 25–2–502 is therefore unavailable to Ms. Dutton. *See First–Citizens Bank & Trust Co. v. Academic Archives, Inc.,* 10 N.C.App. 619, 625, 179 S.E.2d 850, 854, *cert. denied,* 278 N.C. 703, 181 S.E.2d 601 (1971).

### 3. *Unavailability of specific performance.*

Another avenue through which the objecting customers seek to obtain relief is N.C.Gen.Stat. § 25–2–716. This provision, in subsection (i), provides in relevant part that "specific performance may be decreed where the goods are unique or in other proper circumstances."

■ The furniture which the objecting customers seek to obtain is not unique because it is of the type which can be easily purchased from furniture manufacturers and other retailers in the geographical area within which Debtor is located. *Abbott v. Blackwelder Furniture Co.,* 33 B.R. 399, 404 (W.D.N.C.1983); *See Klein v. PepsiCo, Inc.,* 845 F.2d 76, 80 (4th Cir.1988) (holding airplane not so unique as to merit specific performance when three roughly comparable airplanes existed on the market). Therefore,

the objecting customers are not entitled to specific performance based upon the uniqueness of the property. However, the fact that goods are not unique does not, standing alone, preclude an order of specific performance. Specific performance also may be ordered "in other proper circumstances" and "inability to cover is strong evidence of 'other proper circumstances.'" N.C.Gen.Stat. § 25–2–716 Official Comment. For the same reason that this court finds that the furniture is not unique, this court finds that the objecting customers would not be unable to effect cover for the furniture in Debtor's possession. *Abbott,* 33 B.R. at 404.

■ Neither can it be said that the objecting customers were without an adequate remedy at law, which traditionally has been a basis for orders of specific performance. *See Virginia Trust Co. v. Webb,* 206 N.C. 247, 250, 173 S.E. 598 (1934). The right of a buyer to recover the amount paid to a defaulting seller constitutes an adequate remedy at law. The fact that a buyer has paid in full for the goods but has not received them does not constitute grounds for the equitable remedy of specific performance. *See In re Koreag, Controle et Revision S.A.,* 961 F.2d 341, 358 (2nd Cir.1990). *But see Proyectos Electronicos, S.A. v. Alper,* 37 B.R. 931, 933 (E.D.Pa.1983). Stated another way, monetary damages are an adequate remedy with respect to transactions involving the type of property involved in this case. As unsecured creditors of Debtor's bankruptcy estate, the objecting customers may be unable to recover as much of the purchase price for the furniture as they would if Debtor had not filed bankruptcy. However, this does not alter the fact that under state law the objecting customers had an adequate remedy at law and would not have been entitled to specific performance if no bankruptcy had been filed. Congress has specifically provided that creditors like the objecting customers, whose claims "aris[e] from the deposit, before the commencement of the case, of money in connection with the purchase ... of property ... for the personal, family, or household use of such [creditors], that were not delivered or provided," shall each have a sixth level priority unsecured claim to the

extent of $1,800.00. 11 U.S.C. § 507(a)(6).[3] Although this may be insufficient to fully protect consumer depositors, it nonetheless is all the relief that Congress saw fit to provide for such creditors.

### 4. *Unavailability of remedy of replevin.*

■ Another remedy recognized in N.C.Gen.Stat. § 25–2–716 is the right of replevin. This statute, in subsection (3), provides that "the buyer has a right of replevin for goods identified to the contract if after reasonable efforts he is unable to effect cover for such goods or the circumstance reasonably indicate that such effort will be unavailing."

There was no evidence that the objecting customers made reasonable efforts to effect cover for the furniture in the possession of Debtor. Further, since the goods in this case are not unique and are readily available, the court has concluded that the objecting customers would not be unable to effect cover. The right to replevin under N.C.Gen. Stat. § 25–2–716(3) therefore is unavailable in this case.

### 5. *Unavailability of a resulting or constructive trust.*

■ The objecting creditors also argue that they are entitled to relief because the furniture in question is subject to either a resulting or constructive trust.[4] Dealing with these issues, as will be seen, involves an application of § 541 of the Bankruptcy Code as well as state law bearing upon the interests and rights of the parties.

■ Section 541 of the Code, as noted above, defines the bankruptcy estate very broadly. Nevertheless, in determining what property is included in the estate there is interaction between federal bankruptcy law and state law because, in the absence of controlling federal bankruptcy law, the substantive nature of the property rights held by a bankruptcy debtor and its creditors is defined by state law. *See In re Haber Oil Co.,* 12 F.3d 426, 435 (5th Cir.1994); *See also*

*Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). What this means in the present case is that the court must look to North Carolina law to determine whether a constructive trust or a resulting trust exists.

The significance of the constructive trust and resulting trust doctrines in the bankruptcy court derives primarily from Section 541(d) of the Code. This provision provides:

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

It is generally held that this provision excludes from the bankruptcy estate property which is subject to a constructive or other trust. Because such trust property is not part of the estate under § 541(d), the beneficiary of the constructive or other trust is entitled to recover such property from the bankruptcy trustee or debtor. *E.g., In re Quality Holstein Leasing,* 752 F.2d 1009, 1013–14 (5th Cir.1985); *Universal Bonding Ins. Co. v. Gittens and Sprinkle Enterprises, Inc.,* 960 F.2d 366, 372 (3d Cir.1992); *In re Howard's Appliance Corp.,* 874 F.2d 88, 93–95 (2d Cir.1989). *See also* 4 Collier on Bankruptcy ¶ 541.13 (Lawrence P. King ed., 15th ed. 1995) ("Where the existence of a trust has been established, the bankruptcy trustee will be ordered to turn over the property or the proceeds...."). As one court has stated, "§ 541(d) prevails against the trustee's strong-arm powers under § 544." *In re Haber Oil Co.,* 12 F.3d at 436. It is necessary, then, to consider North Carolina law and the

---

**3.** This section was amended effective October 22, 1994 to allow an $1800.00 sixth priority unsecured claim. It formerly provided for a sixth priority unsecured claim of $900.

**4.** The objecting customers argue that the "special property" of N.C.Gen.Stat. § 25–2–401 is the ori-

gin of this alleged trust relationship. A buyer's special property does not create any such trust relationship and, in this case, affords the objecting customers no rights other than those which have been dealt with, and rejected, above.

circumstances under which it calls for the imposition of resulting and constructive trusts.

Under North Carolina law a resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person receiving the property should have the beneficial ownership of the property. *See Strange v. Sink,* 27 N.C.App. 113, 116, 218 S.E.2d 196, 198, *petition denied,* 288 N.C. 733, 220 S.E.2d 353 (1975). A resulting trust also may arise where there is an unenforceable agreement with a party to whom property is transferred for that party to hold the property in trust or to transfer the property to the beneficiary of the resulting trust at a subsequent date. *See Colwell Elec. Co. v. Kale–Barnwell Realty & Constr. Co.,* 267 N.C. 714, 148 S.E.2d 856 (1966).

A constructive trust, under North Carolina, is a trust imposed by the courts to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty, or other circumstances making it inequitable for him to retain such title or interest against the beneficiary of the constructive trust. *See Wilson v. Crab Orchard Dev. Co.,* 276 N.C. 198, 211, 171 S.E.2d 873, 882 (1970).

However, "North Carolina law does not allow the imposition of a resulting or constructive trust in a situation where legal title has not changed hands." *In re Halverson,* 151 B.R. 358, 363 (M.D.N.C.1993) (citing *Fulp v. Fulp,* 264 N.C. 20, 22, 140 S.E.2d 708, 711 (1965)). In the *Fulp* case a wife sought to impose either a constructive or resulting trust on property owned by her husband based upon his verbal agreement that he would convey a one-half interest to her if she would advance money to him to use in making improvements on the property. The husband already owned the property at the time of the agreement. In holding that the wife was not entitled to have either type of trust imposed, the court stated:

> Plaintiff's evidence is insufficient to establish either a resulting or a constructive trust in the land described in the complaint, for defendant acquired no *title* to realty with the use of plaintiff's money. "(A) resulting trust arises, if at all, in the same transaction in which the legal title passes, and by virtue of consideration advanced before or at the time the legal title passes, and not from consideration thereafter paid." ... A constructive trust, on the other hand, arises when one obtains the legal title to property in violation of a duty he owes to another. Constructive trusts ordinarily arise from actual or presumptive fraud and usually involve the breach of a confidential relationship.... Plaintiff's evidence is insufficient to establish in herself any equitable title to the land; defendant did not acquire title with her money.

264 N.C. at 22–23, 140 S.E.2d at 711 (emphasis added).

The evidence in the present case failed to establish either a resulting trust or a constructive trust. Missing in the present case is the essential requirement that there have been a transfer of title to Debtor under circumstances permitting the imposition of a trust. Further, there was no showing of any agreement or intent to create a trust and no showing of fraudulent conduct, any type of fiduciary relationship which was violated or other circumstances which, under North Carolina law, would give rise to either a resulting or constructive trust. The court rejects the argument that there was a fiduciary or confidential relationship between the objecting customers and Debtor. The evidence showed nothing more than routine consumer transactions in which customers came to a retail outlet and on their own made ordinary, routine decisions to purchase goods on display in the retail outlet. Since the objecting creditors failed to establish any type of trust with respect to the furniture in question, such furniture is property of the estate under § 541(a) which the objecting creditors are not entitled to recover from Debtor.

6. *Existence of equitable liens.*

This leaves only the question of whether the objecting customers are entitled to claim an equitable lien against the furniture in question. This, too, requires a consideration of both state law and federal bankruptcy law. Section 544(a)(1) of the

Bankruptcy Code gives the bankruptcy trustee the status of a hypothetical lien creditor. Section 1107 of the Code confers the same status upon a Chapter 11 debtor in possession. However, while it is bankruptcy law which provides the trustee and the debtor with their "strong arm" powers, their exercise of such powers and the extent of such powers are governed entirely by the applicable state law. This is true because § 544(a)(1) confers on the trustee and the debtor no greater rights than those accorded by the applicable state law to a creditor holding a judicial lien. *Havee v. Belk*, 775 F.2d 1209, 1218–19 (4th Cir.1985). Thus, if state law upholds equitable liens and gives equitable liens priority over the hypothetical judgment lien creditor created by § 544(a)(1), then a creditor with an equitable lien may prevail over the trustee in bankruptcy despite his powers under § 544(a)(1). *Angeles Real Estate Co. v. Kerxton*, 737 F.2d 416, 418 (4th Cir.1984) ("Thus, if under applicable state law a judgment lien creditor would prevail over an adverse claimant, the trustee in bankruptcy will prevail; if not, he will not."). Resort, therefore, once again must be had to state law.

In *Fulp v. Fulp, supra*, the court held that even though the plaintiff was not entitled to the imposition of a trust, she was entitled to an equitable lien against the husband's property which secured his obligation to reimburse the wife for the money she had advanced to him. The court reached this conclusion based upon the confidential relationship between the parties, a circumstance which, as indicated above, is not present in the present case. Other North Carolina cases, however, establish that equitable liens are not limited to situations involving fiduciary or confidential relationships. For example, in *Garrison v. Vermont Mills*, 154 N.C. 1, 5–9, 69 S.E. 743 (1910), the North Carolina Court pointed out that an equitable lien may arise from an agreement which shows an intention to charge some particular property with a specific debt or obligation or may be declared by a court of equity out of the general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings. The court has found no North Carolina case involving a situation in which a seller was holding for shipment consumer goods which had been purchased, fully paid for by the buyer and tagged by the seller as sold to the buyer. However, *Garrison v. Vermont Mills, supra*, involved a situation in which the plaintiff had advanced to a mill the net cash value of goods manufactured by the mill pursuant to an agreement under which the goods thus advanced on were to be "billed up" by the mill to the plaintiff and stored by the mill until they were shipped at the direction of the plaintiff. While the goods were still being stored by the mill, the mill went into receivership, giving rise to a dispute between the receiver and the plaintiff. In holding that the plaintiff had an equitable lien against the goods, the court stated that "[t]he money was not advanced upon the credit of the corporation, but practically in partial payment for the goods, which were to be insured in the interpleader's name." In the present case, the equities in favor of the objecting customers are even stronger than in *Garrison v. Vermont Mills*. The money from the objecting customers was not advanced "practically" in payment for the goods—it was advanced absolutely and fully in payment for the goods. The court is satisfied from the North Carolina case law, particularly the decision in *Garrison v. Vermont Mills, supra*, that the North Carolina courts would find that in the present case, where specific items of personal property were purchased by the customers, fully paid for by the customers, marked by the seller as belonging to the customers and were being held by the seller solely for shipment to the customers at no further charge to the customers, those customers may claim an equitable lien against the items of personal property in the possession of the seller.

The court, therefore, concludes that the objecting customers in this case are entitled to claim an equitable lien against the furniture referred to in their respective objections. However, this does not entitle them to block the sale of this furniture by Debtor. As pointed out in the *Fulp* case, an equitable lien, even if upheld, serves only to create an encumbrance against the subject property and does not create an ownership interest in the property.

An equitable lien, or encumbrance, is not an estate in land, nor is it a right which, in

itself, may be the basis of a possessory action. It is simply a charge upon the property, which charge subjects the property to the payment of the debt of the creditor in whose favor the charge exists.

*Fulp v. Fulp,* 264 N.C. 20, 24, 140 S.E.2d 708, 712 (1965). *In accord Winborne v. Guy,* 222 N.C. 128, 131, 22 S.E.2d 220 (1942) ("An equitable lien is not an estate or property in the thing itself, nor a right to recover the thing; that is, a right which may be the basis of a possessory action.").

■ In conclusion, the objecting customers have a right to claim a lien against the furniture described in their objections. The lien claimed by the objecting customers is disputed by Debtor and, presumably, by High Point Bank. Therefore, the court has concluded that, pursuant to § 363(f)(4), Debtor should be permitted to sell the furniture claimed by the objecting creditors free and clear of the lien claimed by the objecting customers and that the lien claimed by the objecting customers should be transferred to the proceeds realized from the sale of such furniture. The validity and extent of all liens asserted against the property, including the lien claimed by the objecting customers, will be determined by further orders of the court after the sale of the furniture has been completed by Debtor. An order so providing will be entered contemporaneously with this memorandum opinion.