McGEE, Judge.
Ned Dorroh and Kimberly D. Dorroh (collectively plaintiffs) filed a summary ejectment action against Kimberly Dorroh's father, John A. Williams (defendant), on 17 October 2002. Defendant filed a counterclaim against plaintiffs alleging rescission, constructive trust, fraud, equitable lien, and unjust enrichment. A hearing was held on 28 April 2003. The trial court entered judgment, declaring plaintiffs the true and exclusive owners of the real property at issue and granting plaintiffs' request for summary ejectment. Defendant acquired the real property at 2878 Corinth Road in Moncure, North Carolina, in 1972 and constructed a house on the property in 1977. Defendant lived in the house from 1977 until thetrial court ordered summary ejectment in July 2003. Kimberly Dorroh was born in 1973 and lived with defendant in the house until she joined the U.S. Army in 1994. While in the army, Kimberly Dorroh met and married Ned Dorroh. In March 1997, plaintiffs were discharged from the army and were invited by defendant to move into the house with him.
Defendant experienced financial difficulties in 1998 due to a failed business, and a foreclosure action was filed against defendant's real property. Defendant did not want to lose the house so he proposed that plaintiffs purchase it. Defendant was an experienced realtor and helped plaintiffs obtain a low interest Veterans Affairs (VA) loan to allow plaintiffs to purchase the house through the filing of an upset bid. Plaintiffs obtained a VA loan in the amount of $65,650. Defendant deeded the real property to plaintiffs on 28 August 1998. Plaintiffs began making monthly mortgage payments of $575.
At trial, the parties concurred that they originally agreed that defendant would reimburse plaintiffs for the amount of the loan and plaintiffs would then reconvey the real property to defendant. However, plaintiffs and defendant were not in accord as to the other terms of their oral agreement (the agreement). Plaintiffs contended they agreed to reconvey the real property to defendant within one year provided defendant reimbursed plaintiffs for the loan amount within that year. However, defendant asserted that there was no time limit on the agreement to reconvey the real property and that the agreement was an express oral trust. Defendant also asserted, in the alternative, that plaintiffs had waived any time restriction on the agreement.
Defendant made no payments to plaintiffs until October 2001, when he paid them $9,500. He made another payment of $9,500 to plaintiffs in December 2001. Defendant argued that these payments were to reimburse plaintiffs for the amount they had paid on the loan since 1998. Plaintiffs, however, asserted that they understood this money to be reimbursement for utility and house-related expenses that plaintiffs had requested from defendant in the fall of 2001.
In addition to the above facts, the trial court found that plaintiffs had held title to the house since August 1998, but that plaintiffs and defendant "had an understanding" that defendant would repay the loan within one year and that plaintiffs would then reconvey the house to defendant. The trial court found that plaintiffs had paid for the utilities, food, and home repairs for the entire household, including defendant, since August 1998. The trial court also found "after various unmet requests for help with expenses, [plaintiffs] gave [defendant] a written `bill' for payment for various house-related expenses, including three years' worth of rent, totaling $11,601.46." The trial court further found that defendant did not pay plaintiffs for any part of the loan or the other living expenses until the fall of 2001 when defendant gave plaintiffs two checks, each for $9,500. Based on these findings of fact, the trial court made the following conclusions of law: 1. The Plaintiffs hold legal title to the property in question.
2. The period of time during which the plaintiffs would be held to a mutually agreed upon duty to reconvey the property to Defendant has long since expired; [defendant's] persistent belief to the contrary notwithstanding.
3. On the facts of this case, there is no evidence of "unjust enrichment" of the Plaintiffs, giving rise to any right of the Defendant to an equitable lien on the property.
In a judgment entered on 24 July 2003, the trial court declared plaintiffs "to be the true owners in fee simple" of the house and ordered that defendant be removed from plaintiffs' property. Defendant appeals.
We note that defendant does not present arguments on his assignments of error five, six, seven, ten, twenty, and twenty-two. These assignments of error are thus deemed abandoned. N.C.R. App. P. 28(b)(6).
I.
Defendant first argues that the trial court erred by failing to make findings of fact and conclusions of law as to whether plaintiffs waived the one-year time limit on defendant's performance. Specifically, defendant argues that plaintiffs waived this time limit by: (1) reiterating the agreement in the fall of 2001 and (2) accepting two checks, each for $9,500, in October and December 2001. While defendant does not demonstrate how the failure to make these findings of fact harmed or prejudiced his case, defendant argues that this issue was a critical matter andthat it was the trial court's duty to "resolve all controversies between the parties raised by the pleadings and the evidence." A trial court need not make findings of fact on all evidence presented, but it must "make brief, pertinent and definite findings and conclusions about the matters in issue." Fortis Corp. v. Northeast Forest Products, 68 N.C. App. 752, 753, 315 S.E.2d 537, 538 (1984). A trial court need only make "specific findings on the ultimate facts established by the evidence, admissions, and stipulations that are determinative of the questions raised in the action and essential to support the conclusions of law reached." Mitchell v. Lowery, 90 N.C. App. 177, 184, 368 S.E.2d 7, 11, disc. review denied, 323 N.C. 365, 373 S.E.2d 547 (1988). Furthermore, as long as a trial court's findings of facts are supported by competent evidence they will be upheld on appeal even if there is also evidence to support contrary findings. Blackwell v. Butts, 278 N.C. 615, 619, 180 S.E.2d 835, 837 (1971). We will also uphold a trial court's conclusions of law provided they are supported by the findings of fact. Pineda-Lopez v. N.C. Growers Ass'n, 151 N.C. App. 587, 589, 566 S.E.2d 162, 164 (2002).
In the present case, plaintiffs filed a summary ejectment action, and defendant raised the issue of whether plaintiffs had valid title, asserting specifically that plaintiffs were holding "legal title to the House in trust for [defendant] who is the beneficial owner." The ultimate issue before the trial court therefore was whether plaintiffs had valid title to the real property. The trial court, needing only to address this issue, made the following findings of fact:
12. [Plaintiffs] paid to have the house appraised. [Defendant] paid the settlement charges on the loan. [Defendant] coached [plaintiffs] in obtaining the VA loan. He contacted the person who did the loan. Since August 1998, [plaintiffs] have held the legal title to this home.
13. The Court finds that [defendant and plaintiffs] had an understanding in August 1998: [defendant] expected to be able to repay the $65,650 loan, and [plaintiffs'] monthly loan payments, within about a year's time. [Defendant] anticipated a cash payment from the State in a condemnation action. Based on their understanding of this representation, [plaintiffs], in turn, agreed that they would reconvey the property to [defendant] when he paid off the loan and repaid them for their monthly mortgage payments. [Plaintiffs] intended to honor this agreement within the time frame the parties had contemplated.
. . . .
16. All utilities have been in [plaintiffs'] name[s] since August 1998: telephone, electricity, homeowners insurance, etc.
17. [Plaintiffs] have paid the $575.00 mortgage on this home since August, 1998. In addition, they have paid for food, utilities, and home repairs, including a well and a paint job, for the three adults and the two children born to [plaintiffs] since they moved into this house, from August 1998 until the present date.
18. For some thirty-nine (39) months, [defendant] did not make any payments to [plaintiffs]. Since October 2001, [defendant] neither contributed to household expenses, nor did he tender payment of the original VA loan.
These findings of fact are supported by competent evidence and they address the ultimate issue as to whether plaintiffs have valid title to the real property. Additionally, these findings supportboth the conclusion of law that "[p]laintiffs hold legal title to the property in question" and the judgment that plaintiffs be declared the true owners of the house. Thus, contrary to defendant's argument, the trial court was not required to make any findings of fact or conclusions of law as to whether plaintiffs waived the time limit in the parties' agreement to reconvey the real property.
As part of his argument on this issue, defendant presents several explanations as to why the agreement he made with plaintiffs was legally enforceable. He argues that the agreement was an express oral trust, that it was an oral contract to reconvey the real property, and finally that it was enforceable under the theory of equitable estoppel. However, these contentions do not focus on or support defendant's argument that the trial court erred when it failed to make findings of fact or conclusions of law on the issue of whether the one-year time limit to defendant's performance of the agreement was waived. Thus, we do not address these arguments.
II.
Defendant next contends that the trial court erred in granting forfeiture as the remedy, where forfeiture was not a provision in the oral agreement between the parties. Defendant argues that the trial court "applied a forfeiture remedy" and that "[f]orfeitures are abhorred by the law." Defendant also argues that the trial court erred in ordering forfeiture as a remedy when it did not find as fact or conclude as a matter of law that the agreement toreconvey the real property included a forfeiture provision.
Defendant's argument is premised on the assumption that either an express oral trust or an enforceable contract was created between plaintiffs and defendant. Neither an oral trust nor an enforceable contract existed in the present case. Also, defendant does not show what exactly was forfeited. Forfeiture, as defined in Black's Law Dictionary, is the "divestiture of property without compensation" or "[t]he loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty." Black's Law Dictionary 677 (8th ed. 2004). Plaintiffs have held title to the real property since August 1998 when defendant avoided foreclosure by deeding the real property to plaintiffs. Plaintiffs have since made all of the mortgage payments. Defendant has not been divested of any property without compensation. The only evidence presented to challenge the validity of plaintiffs' title was the controverted evidence that plaintiffs and defendant had an oral agreement about when defendant would repay plaintiffs' loan, and when plaintiffs would reconvey the house. Such evidence of an oral unenforceable agreement is insufficient to overcome a deed absolute on its face. The trial court did not order forfeiture as a remedy; it only confirmed that plaintiffs held legal title to the real property. This assignment of error is without merit.
III.
Defendant contends that the trial court erred in its determination of his unjust enrichment and equitable lien claims. Specifically, he argues that the trial court's third conclusion oflaw is insufficient to permit appellate review because it is based on errors of law and is not supported by the findings of fact. Defendant similarly argues that the trial court erred when it did not make findings of fact as to his equity in the real property. We disagree with both of these arguments.
Unjust enrichment occurs when a person fails
"to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself [or herself] at the expense of another. . . ."
Ivey v. Williams, 74 N.C. App. 532, 534, 328 S.E.2d 837, 839 (1985) (quoting 66 Am. Jur. 2d Restitution and Implied Contracts Sec. 3, at 945 (1973)). A trial court may declare an equitable lien when justice so requires. Fulp v. Fulp, 264 N.C. 20, 140 S.E.2d 708 (1965); Garrison v. Vermont Mills, 154 N.C. 1, 69 S.E. 743 (1910) (defining when equitable liens may arise). For instance, equitable liens may be used as a remedy when a party has been unjustly enriched. Embree Construction Group v. Rafcor, Inc., 330 N.C. 487, 496, 411 S.E.2d 916, 923 (1992).
A trial court's conclusions of law will be upheld on appeal if they are supported by the facts. Pineda-Lopez, 151 N.C. App. at 589, 566 S.E.2d at 164. In this case, the trial court's third conclusion of law stated that there was no evidence that plaintiffs were unjustly enriched and no evidence supporting defendant's equitable lien claim. Defendant argues that the facts demonstrate that plaintiffs were unjustly enriched because defendant forfeitedhis equity in the real property. Defendant asserts that evidence showed that the property was worth in excess of $112,000 when defendant deeded it to plaintiffs, and plaintiffs only paid $65,650 for the property. Additionally, defendant contends that plaintiffs were unjustly enriched by his paying them a total of $19,000 in the fall of 2001. However, the trial court found that defendant "was experiencing severe financial difficulties" and that the "house had gone into foreclosure and was put up for sale." Plaintiffs accommodated defendant by purchasing the real property. Defendant would have lost his equitable interest in the real property if it had been sold to a third party through foreclosure. Thus, defendant has shown nothing unjust about any enrichment plaintiffs may have experienced relating to equity in the real property.
With regard to the $19,000 paid to plaintiffs by defendant in the fall of 2001, the evidence is disputed as to whether this amount was to reimburse plaintiffs for payments on the VA loan, or whether it was to reimburse plaintiffs for their expenses and costs in supporting defendant for more than three years. The trial court found that plaintiffs had paid the mortgage payments since August 1998, that they paid for most of the household's "food, utilities, and home repairs," that defendant did not pay anything to plaintiffs for thirty-nine months, and that aside from the two payments of $9,500 defendant made in the fall of 2001, defendant made no other payments to plaintiffs. These findings of fact support the conclusion of law that "there is no evidence of `unjust enrichment' of the plaintiffs." Contrary to defendant's contentions, the trial court did not need to make specific findings regarding the value of the real property at the time defendant deeded it to plaintiffs. As discussed above, a trial court is not required to make findings of fact on all evidence presented, but it must make "findings and conclusions about the matters in issue." Fortis Corp., 68 N.C. App. at 753, 315 S.E.2d at 538. We reiterate that the primary issue was whether plaintiffs had valid title to the real property. Defendant raised the issue of unjust enrichment and equitable lien at trial, and the trial court appropriately made findings of fact from which it could conclude that plaintiffs were not unjustly enriched. The trial court did not err in its denial of defendant's claims for unjust enrichment and equitable lien.
We affirm the judgment of the trial court.
Affirmed.
Judges McCULLOUGH and ELMORE concur.
Report per Rule 30(e).