D. A. GARRISON v. VERMONT MILLS (INCORPORATED).

(Filed 25 May, 1910.)

1. Contracts of Sale — Commission Man — Advances — Executory Liens—Title.

A contract between a commission company and a manufacturing plant whereby the former was to have exclusive sale of the product of the latter at an agreed commission, and to advance a certain per cent of the value of the goods on hand stored in the mill, which were to be billed to it and kept stored in a separate warehouse and insured for its benefit, does not of itself create a lien on the goods for advances made: (*a*) the contract is executory, that the goods should be shipped for sale on commission; (*b*) there is no lien given or recorded; (*c*) an invoice alone does not transfer title, and marking and invoicing the goods does not create a lien for the advances.

2. Contracts—Commission Man—Advances—Liens—Possession.

Possession, actual or constructive, is necessary to create a lien on goods in favor of a commission man who, under the terms of his exclusive contract of sale, has advanced money thereon.

3. Same—Acquiescence—Silence.

A commission man claiming a lien under the terms of his contract of exclusive sale by reason of having advanced money on goods manufactured by a corporation and stored at its mills, does not show the possession necessary to his lien by establishing as a fact that after making the advances he went to the mill, and asked the superintendent of the mill to take charge of the goods for him, the president of the latter standing by, but not assenting.

4. Contracts—Commission Man—Advances—Superintendent—Agency—Possession.

The superintendent of a manufacturing company has no authority to transfer possession of the company's property to a stranger, unless authorized by the company; and when a commission man has made advances on the goods of the company without taking possession, but by verbal agreement with him the superintendent

has attempted to give him possession, with the understanding that it should be held for him, it is insufficient for the purpose of creating a lien for the advances made.

MANNING, J., dissenting; HOKE, J., concurring in dissenting opinion.

APPEAL by defendant company's receiver, from *Webb, J.*, heard on exceptions to referee's report, by consent at Charlotte, 7 February, 1910, the proceedings being instituted in GASTON.

The facts are sufficiently stated in the opinion of the Court.

*Burwell & Cansler* and *O. F. Mason* for plaintiff.
*King & Kimball* and *J. H. Pou* for defendant.

CLARK, C. J. On 25 January, 1907, L. L. Jenkins, the appellee, was appointed receiver of the Vermont Mills in Gaston County, and took possession of all its property and effects. Among the effects so taken possession of by the receiver were a number of bales of cloth. Some of these bales were in the warehouse of the company and some in the basement. The appellant, the Cone Export and Commission Company, on 26 February, 1907, having made claim to said bales of cloth, entered into an agreement with the receiver by which said bales were sold and the proceeds were to be held to abide the decision of the court whether they should be paid to the receiver for distribution according to law among the creditors of said company, or should be paid over to the appellant.

The facts found by the referee, and approved by the court, are, that on 15 March, 1906, the Vermont Mills made a contract with the Cone Export and Commission Company, "whereby the latter was to have exclusive sale of the products of the mill at a stipulated commission and would advance 75 per cent of the net cash value of the goods on hand stored in mill; that the goods thus advanced upon were to be billed to the Cone Company and stored in a separate warehouse and insured by the mill for the benefit of the claimant. The claimant agreed to guarantee the payment of the amount for which the goods were sold by it. The mills reserved the right to sell at its own store and to fill any contracts then in force. On 15 January, 1907, one Vaught, agent of the claimant, visited the mills in the company of its president and the superintendent (Coble), and took an inventory of all the cloth on the looms, and also that in the basement and in the warehouse, and thereupon stated that he took possession of all the cloth as the property of the said Cone Export and Commission Company, and appointed said Coble as its agent to take charge of all the cloth. At that time the Vermont Mills were indebted to the Cone Ex-

port and Commission Company in an amount in excess of the value of said cloth, and was also largely indebted to other creditors, and insolvent. The judge finds as a fact that the said president of the Vermont Mills did not give his consent to the taking of the goods by Vaught, though he was present. The cloth remained in its then position till the receiver took charge on 26 January, as above stated..

The claim of the appellant, the Cone Export and Commission Company, is that by virtue of its contract and the action of the said Vaught on 15 January it is entitled to the proceeds of the sale of these goods.

The Cone Export and Commission Company acquired no lien by virtue of its contract of 15 March, 1906, for that was purely an executory contract that goods should be shipped to said company for sale on commission. It acquired none by virtue of its advances, for there was no lien given or recorded. Nor did the fact that the Vermont Mills had marked the goods and invoiced them to the appellant have that effect, for an invoice does not transfer the title. *Dows v. Bank,* 91 U. S., 630; *Sturm v. Baker,* 150 U. S., 328, 23 Cyc., 351.

A factor has no lien upon the goods of the principal unless he holds possession of the goods. "Possession, actual or constructive, is an essential element in the factor's lien." 19 Cyc., 160, and numerous cases there cited. The appellant's claim depends, therefore, upon whether the action of Vaught on 15 January, 1907, amounted to a taking possession of said goods. We do not think that it can be so held. He appeared on the premises of the debtor, took an inventory of the cloth, whether in the looms or baled up and lying in the basement and in the warehouse. Possession was not surrendered by the company, nor by any one authorized to act for it. The court finds that the president of the company, who was present, did not assent to Vaught taking possession. He did not obtain possession with the consent of the company nor without it, for he had no process of any court. He contented himself with directing the superintendent to take possession of the goods and hold them as agent of the Cone Company. There was no physical change in the status of the goods. The superintendent had no authority to transfer the possession of the goods, which he held as a servant for the company, to a stranger. The president so testifies without contradiction, and we know it to be so as a matter of law. The superintendent is not an officer of the company, but merely an employee. The servant could not assent to transfer the goods he held for the master to another. Vaught thereafter exercised no dominion over the goods nor took any actual

possession. They remained just as they lay, none the worse and none the better for the declaration of Vaught, and unmoved by anything he said or did; they remained untouched until the receiver, by the authority of the court, took possession of them as the property of the company, which had not till then voluntarily or by order of any court lost possession of them.

When the receiver took possession of them, he did not take them from Vaught, but as the property of the company and lying in its mill. There being no lien upon them, the judge properly held that the claimant had no priority over the proceeds in the distribution of the proceeds by the receiver.

Affirmed.

MANNING, J., *dissenting:* I regret at all times not to be in agreement with the majority of this Court, in cases submitted for our decision; but I am constrained to dissent from the conclusion reached in the disposition of this appeal. In section 155, Vol. I, Pomeroy's Equity Jurisprudence, the learned author says: "It is well established that where a court takes possession of the property of a party, and appoints a receiver to administer the trust for the benefit of all interested parties, the court receives such property impressed with all existing rights and equities, and the relative rank of claims and standing of liens remains unaffected by the receivership. Every legal and equitable lien upon the property is preserved, with the power of enforcing it. The receivership does not destroy any liens that may have been acquired before the appointment." Applying this principle, stated with such admirable clearness, I think the contract between the Vermont Mills and the Cone Export and Commission Company created in the latter, upon making the advances to the former, as stipulated in paragraph 5, a right in equity against the mills, which was completed by the delivery of the baled goods, the subject of this action. It is admitted that the mills suspended manufacturing before the acts were done, which, in my opinion, constituted a delivery to the commission company, under the contract and before the appointment of the receiver. During this period, advances to an amount more than double the value of the particular goods having been made theretofore, an agent of the commission company visited the Vermont Mills, and in the presence of its president, of the man who was by him thought to be its secretary and had been up to three days prior thereto, and of its superintendent, made invoices of the bales of manufactured goods, by numbers and marks which had been placed thereon for the commission company, and in the presence of the president, the plaintiff Garrison, and of Durham, the supposed sec-

retary, and without objection or protest from either, requested Coble, the superintendent, to take charge of them as agent of the commission company, and he assented to do so. There was no removal of the goods, nor in view of the above do we think removal necessary to complete delivery. The mills were shut down and suspended; they did not again resume manufacturing, and there was no commingling of these goods with others. There was no word of objection or protest by the officers of the mills to what was said and done; it is true, there was no positive assent. The officers saw; they heard; they were witnesses; but they stood mute.

It is admitted in the opinion of the Court that the equitable lien of the commission company would have been complete by delivery, and this principle is well established. So the decisive question is, Did the acts narrated constitute a delivery? I cannot think that a change of physical location in view of the actual occurrences was required to complete the equitable lien of the commission company. It was acting strictly within its rights under the contract; the taking possession of the goods was not tortious, but under and by virtue of its contract; and the delivery by the mills was in accordance with its obligation under the contract. If a corporation makes a valid agreement to sell a horse for $150, and the other party subsequently pays the price to the treasurer of the corporation, I cannot think the law requires a meeting of its board of directors to authorize the delivery of the horse, or that the taking possession of the horse by the purchaser in the presence of the president and without objection is an unlawful or tortious act. Nor can I see that it is material that the absolute title does not pass by the delivery, but that the delivery is for the purpose of sale and an application of the proceeds to the payment of advances made on them. My conclusion is supported by the following cases and authorities: *Kollock v. Jackson,* 5 Ga., 153; *Campbell v. Penn,* 7 La., 371; *Hamilton v. Campbell,* 9 La., 531; *Jackson v. Rutherford,* 73 Ala., 155; *Hanselt v. Harrison,* 105 U. S., 401; *Gregory v. Morris,* 96 U. S., 619; *Yealman v. Savings Institution,* 95 U. S., 764; *Walker v. Brown,* 165 U. S., 654. In this last case the Court quotes with approval section 1235, 3 Pomeroy Equity Jurisprudence, where this doctrine is stated: "The doctrine may be stated in its most general form that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer

the property as security, creates an equitable lien upon the property so indicated, which is enforcible against the property in the hands, not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees and purchasers or encumbrancers with notice.  *  *  *  The ultimate grounds and motives of this doctrine are explained in the preceding section, but the doctrine itself is clearly an application of the maxim, 'equity regards as done that which ought to be done.' "

I do not think that the principle settled in *Brem v. Lockhart,* 93 N. C., 191, and the numerous decisions of the Court since approving it, is contravened, for the reason that the court, in the present case, through its officer, is administering the assets of the defendant corporation "in trust for the benefit of all its creditors, impressed with the existing rights and equities, and the relative rank of claims and standing of liens remains unaffected"; nor is the doctrine declared in *Duke v. Markham,* 105 N. C., 131, and since then repeatedly approved, contravened; that doctrine being that the power given by a corporation to execute a mortgage on, or make other conveyance of, corporate property can only be given at a corporate meeting duly held. In this present case it is not questioned that the contract between the Vermont Mills and the commission company received proper corporate authorization. I am, therefore, of the opinion that the commission company was entitled to the proceeds of the sale of the manufactured goods, upon the facts found, and that his Honor should have so adjudged.

Hoke, J., concurs in the dissenting opinion.