J. W. WINBORNE, AS EXECUTOR AND TRUSTEE UNDER THE LAST WILL AND
    TESTAMENT OF W. W. GUY, DECEASED, v. J. EMMETT GUY AND WIFE,
    DOROTHY H. GUY; E. C. GUY (A SINGLE MAN), ROBERT E. GUY AND
    WIFE, KITTY GUY; NANNIE GOOCH GUY LONG AND HUSBAND,
    EDWARD LONG; MATTIE GUY DANIEL (WIDOW), AND THE FIRST
    NATIONAL BANK OF MARION, N. C., A CORPORATION.

(Filed 14 October, 1942.)

1. Equitable Liens § 1—

    Any agreement in writing, however informal, made by the owner of
    real or personal property, upon a valid consideration, by which an inten-
    tion is shown that the property shall be security for the payment of money
    by him, creates an equitable lien upon the property described, which is
    enforceable against the property in the hands of the original contractor, his
    heirs, administrators, executors, voluntary assignees and purchasers or
    encumbrancers with notice.

2. Equitable Liens § 3—

    A suit in equity to foreclose is the proper remedy to enforce an equita-
    ble lien.

**3. Equitable Liens §§ 1, 3—**

Where a will devised testator's home to his wife for life, but authorized a sale under certain conditions, one of which was that a debt should be first paid from the proceeds, without disposing of the surplus, if any, and all of the children and heirs of testator entered into an agreement in writing, acknowledging the amount of the debt to be first paid from proceeds of the land, upon a sale for partition, an equitable lien on the land is created, and judgment sustaining demurrer to a suit to enforce same, after the death of testator's wife, was error.

WINBORNE, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Sink, J.,* at June Term, 1942, of McDOWELL. Reversed.

Civil action to foreclose an equitable lien.

In 1913, J. Emmett Guy died seized and possessed, among other property, of a certain lot or parcel of land situate in Marion, N. C. This was his home place. Said testator left him surviving his widow, now deceased, and the following children: W. W. Guy, plaintiff's testator, and the defendants J. Emmett Guy, E. C. Guy, Robert E. Guy, Nannie Gooch Guy Long, and Mattie Guy Daniel.

The said J. Emmett Guy in his last will and testament made the following provision in respect to his home place, to wit:

"It is my wish that after my death, the place that I own and occupy at Marion, North Carolina, shall be held and occupied by my wife, Mattie W. Guy, as a home and for her and our children as well as my daughter, Nannie, so long as my said wife shall live. But if it shall seem advisable to sell said place, or any part thereof, the said Mattie W. Guy shall have the right to sell and convey the same, provided any two of our children and one of *Mine,* shall write in the deed to the purchaser.

"In case such sale is made during the life of my wife, Mattie W. Guy, or after her death, it is my wish that before any distribution of the proceeds of such has been made, it is my desire that my son, Wright W. Guy, shall be repaid and reimbursed in full for the mortgage which W. C. Atwell held against me, with its accumulated interest and also for the cash with interest of any permanent improvement which he may have made or paid for on said place of the dwelling house thereon."

Thereafter, on 13 February, 1913, W. W. Guy entered into an agreement in writing with his brothers and sisters in terms as follows:

"NORTH CAROLINA—McDOWELL COUNTY.

"Whereas, J. Emmett Guy of Marion, North Carolina, departed this life on the 11th. day of Feb'y, 1913, seized and possessed of a certain lot or parcel of land situate in said town of Marion, State of North Carolina, a life estate in which real estate he devised to his widow, Mattie W. Guy, for and during her natural life, but as to the remainder therein died

intestate, and which remainder descended and passed to his children and heirs at law share and share alike, which children and heirs at law are as follows, to-wit: Robt. E. Guy, Nannie Gooch Guy, W. Wright Guy, Edwin C. Guy, Mattie Guy Daniel and J. Emmett Guy;

"And Whereas, at the time of his death said decedent was indebted to said W. Wright Guy and his said widow, Mattie W. Guy, for certain moneys advanced by them to him, and for the cost of certain permanent improvements made by them upon said real estate, for the payment of which said decedent left no personal estate, and which indebtedness or debts are therefore proper charges against said real estate:

"Now, therefore, for valuable consideration it is hereby agreed that the sum total due said W. Wright Guy by said estate of said decedent, inclusive of the mortgage assigned him by W. C. Atwell and of all demands whatsoever, is of this date the sum of $1,000.00; and that the sum total due said Mattie W. Guy, inclusive of all demands whatsoever, is of this date the sum of $320.00; it is further agreed that said sums and each of them shall be paid from said real estate before any partition of the same to and amongst those entitled thereto, or be paid from the proceeds of sale of said real estate before any distribution of such proceeds to and amongst those entitled thereto; it is further agreed that said sums so due said W. Wright Guy and Mattie W. Guy shall bear interest from this date, and that neither of said sums nor any part of them shall be barred or prejudiced by any statute of limitations or otherwise, and the signers hereto other than the said W. Wright Guy and Mattie W. Guy, hereby waive the benefit of the statute of limitations, and any and all other benefits that might or could be pleaded to the prejudice of said debts.

"Witness our hands and seals this 13th. day of Feb'y, 1913."

On 2 April, 1932, W. W. Guy died leaving a last will and testament in which he named the plaintiff as executor and also as trustee for the beneficiaries therein named.

The widow of J. Emmett Guy, through whom the parties claim the *locus in quo,* having died, plaintiff instituted this action in which he seeks to have it adjudged that said paper writing constitutes an equitable lien on the home place and for a decree of foreclosure. The defendants J. Emmett Guy and wife and E. C. Guy appeared and demurred to the complaint for that: (1) the court has no jurisdiction of the subject of the action; (2) the jurisdiction affecting the subject matter of the action is vested in the clerk of the Superior Court; (3) plaintiff has an adequate remedy at law through petition before the clerk to sell lands to make assets; (4) the complaint does not state facts sufficient to constitute a cause of action; (6) the complaint expressly negatives jurisdiction of

the court and affirmatively shows jurisdiction of the clerk; (7) no suffi-
cient facts are alleged to authorize the court to declare the debt sued
upon a first lien against the property or to foreclose the same; and (8)
no consideration for the execution of said contract is alleged and it is
*nudum pactum.*

When the cause came on to be heard upon the demurrer the court
below entered its judgment sustaining the demurrer and plaintiff ex-
cepted and appealed.

*Proctor & Dameron for plaintiff, appellant.*
*Charles Hutchins for defendants, appellees.*

BARNHILL, J. Does the agreement between the parties create an
equitable lien upon the real property therein described? If so, plaintiff's
remedy is by an action to foreclose.

There is more than one method of creating an equitable lien. Here,
however, we are interested only in the law relating to the creation of such
liens by written contract. Therefore, we may confine ourselves to that
particular phase of the subject.

An equitable lien is not an estate or property in the thing itself, nor a
right to recover the thing; that is, a right which may be the basis of a
possessory action. It is neither a *jus ad rem* nor a *jus in re.* 17 R. C.
L., 603, sec. 12; 1 Pomeroy, Eq. Jur., 219, sec. 165; *Garrison v. Vermont
Mills,* 152 N. C., 643, 68 S. E., 142; *Arnold v. Porter,* 122 N. C., 242.
Thus it is distinguished from a mortgage.

"In equity, any agreement in writing, however informal, made by the
owner of land, upon a valid consideration, by which an intention is
shown that the land shall be security for the payment of money by him,
creates an equitable lien upon the land. Such an informal instrument
or contract, by which the owner of land agrees or undertakes to secure his
creditor upon the land, is ordinarily referred to as an 'equitable mort-
gage,' an expression which originated in the consideration that a trans-
action of this character, while absolutely ineffective at law, as not involv-
ing a transfer of the legal title, was effective in equity for the purpose
for which a legal mortgage was ordinarily utilized, to secure the payment
of money." 5 Tiffany, Real Property (3d), 659, sec. 1653; 4 Pomeroy,
Eq. Jur., 696, sec. 1235. It is created by a written agreement to appro-
priate specific property to the discharge of a particular debt. 9 Thomp-
son, Real Property, 197, sec. 4825.

The doctrine may be stated in its most general form, that every express
executory agreement in writing, whereby the contracting party suffi-
ciently indicates an intention to make some particular property, real or
personal, or fund, therein described or identified, a security for a debt

or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees and purchasers or encumbrancers with notice. 4 Pomeroy, Eq. Jur. (5th), 696, sec. 1235; *Cuppenheimer & Co. v. Mornin,* 101 A. L. R., 75.

It is well established that an agreement in writing to appropriate specific property to the discharge of a particular debt, or an instrument intended to be a mortgage, creates an equitable mortgage. The form of the instrument is not conclusive against either party. When the plain intent of the contract is shown by the instrument, aided by the surrounding facts and circumstances, equity will decree that the instrument is an equitable mortgage. *Parry v. Reinertson,* 63 A. L. R., 1051, 41 C. J., 293.

Where there is an intention coupled with a power to create a charge on property, equity will enforce such charge against all except those having a superior claim. Such liens are simply a right of a special nature over the thing which constitutes a charge or encumbrance upon the thing itself. 4 Pomeroy, Eq. Jur. (5th), 692, sec. 1233; *Ketchem v. St. Louis,* 101 U. S., 306, 25 L. Ed., 999; *Garrison v. Vermont Mills, supra.* See also *Fert. Works v. Newbern,* 210 N. C., 9, 185 S. E., 471; and *Godwin v. Bank,* 145 N. C., 320.

Applying these principles to the case in hand we are led to the conclusion that the agreement between the parties creates an equitable lien on the *locus in quo.* The contract is in writing. It sufficiently describes the home place, sets forth the debt and expresses the intent of the parties that the debt "shall be paid" out of the proceeds of the realty. *Jackson v. Carswell,* 34 Ga., 279.

Thus it appears that the agreement effectively pledges the land as security for the payment of the debt. It was executed and delivered in compliance with and in furtherance of the wish expressed in the will of the defendants' ancestor through whom they derive title. It creates an equitable lien upon the home place as security for the payment of the debt therein specified. 33 Am. Jur., 429.

The will itself acknowledges the debt which is the consideration of the contract and directs its payment in language sufficient to create a charge thereon. To that end the remainder was not devised but was left as an undevised asset for the discharge of this obligation.

It is apparent on the face of the agreement that its very purpose was to avoid the sale of the remainder, with its attendant disadvantages, before the expiration of the life estate, except with the consent and joinder of the life tenant. Lapse of considerable time was contemplated.

To guard against this and to prevent a loss of the creditor's right by reason thereof, defendants expressly agreed not to plead any statute of limitations. On this record it cannot be said that plaintiff has been guilty of such laches as would bar his right to proceed in equity.

Defendants' desire to hold the home place intact during the life of their mother to the end that she might have a home undisturbed by a sale to make assets was commendable. The creditor co-operated on the terms set out in the agreement. Now that the motivating purpose of the agreement has been accomplished, they are called upon to comply with their end of the bargain. This they must do.

The obligation created by the agreement was substituted for the creditor's remedy against the land under the will and the law covering estates. Plaintiff must now proceed against defendants individually in a civil action rather than in the probate court. He has no other adequate remedy.

A suit in equity to foreclose is the proper remedy. "A charge of . . . some specific sum upon land is usually enforceable in equity alone. . . . And the mode of enforcement is ordinarily by means of a decree for the sale of the land, and payment of the amount of the charge from the proceeds of the sale." 5 Tiffany, Real Property (3d), 657, sec. 1652; 4 Pomeroy, Eq. Jur. (5th), 692, sec. 1233; *Ketchem v. St. Louis, supra; Garrison v. Vermont Mills, supra.*

It is settled beyond question that a court of equity is the appropriate tribunal for the enforcement of an equitable, as distinguished from a statutory or common law, lien. 17 R. C. L., 614.

There was error in the judgment below sustaining the demurrer. It must be

Reversed.

WINBORNE, J., took no part in the consideration or decision of this case.