PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-2135

FLYING PIGS, LLC,

                    Plaintiff – Appellant,

          v.

RRAJ FRANCHISING, LLC,

                    Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville. Terrence W. Boyle, District Judge. (4:13-cv-00010-BO)

Argued: April 11, 2014                    Decided: July 1, 2014

Before KING, GREGORY, and THACKER, Circuit Judges.

Vacated and remanded by published opinion. Judge King wrote the opinion, in which Judge Gregory and Judge Thacker joined.

**ARGUED:** Ernest Bradley Evans, WARD & SMITH, PA, Greenville, North Carolina, for Appellant. Gavin James Reardon, ROSSABI BLACK SLAUGHTER, PA, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Norman J. Leonard, II, WARD & SMITH, PA, Asheville, North Carolina, for Appellant. Amiel J. Rossabi, ROSSABI BLACK SLAUGHTER, PA, Greensboro, North Carolina, for Appellee.

KING, Circuit Judge:

In late 2012, a North Carolina business called Flying Pigs, LLC, sued a North Carolina entity called RRAJ Franchising, LLC, in the Superior Court of Lenoir County, North Carolina, alleging a claim under North Carolina law. RRAJ removed that lawsuit to the Eastern District of North Carolina, asserting federal question jurisdiction pursuant to 28 U.S.C. § 1331. The district court denied Flying Pigs's motion to remand to Lenoir County for lack of federal jurisdiction, and then granted RRAJ's Rule 12(b)(6) motion to dismiss the complaint with prejudice. See Flying Pigs, LLC v. RRAJ Franchising, LLC, No. 4:13-cv-10 (E.D.N.C. Aug. 22, 2013), ECF No. 22 (the "Dismissal Order"). As explained below, we vacate the Dismissal Order and remand for the Flying Pigs lawsuit to be returned to Lenoir County.

I.

Flying Pigs initiated this action in an effort to enforce, by foreclosure and judicial sale, an equitable lien against certain trademarks and associated goodwill now owned by RRAJ Franchising. The equitable lien was the result of a 2010 lawsuit in the Superior Court of Guilford County, North Carolina, where Flying Pigs pursued and was awarded more than

2

$500,000 for rental payments owed by its delinquent commercial tenant, Chelda, Inc.[1]

Chelda, which is headquartered in Greensboro, the county seat of Guilford County, owned Ham's Restaurants, Inc. Ham's operated a number of eponymously named family eateries in North Carolina and Virginia. In 1999, Chelda and Ham's executed a twenty-year lease with Flying Pigs to house a Ham's Restaurant in Kinston, the county seat of Lenoir County. By 2008, however, Chelda and Ham's were in financial turmoil and, by June 2009, ceased making their monthly rental payments to Flying Pigs. On October 9, 2009, Flying Pigs notified Chelda and Ham's that they were in breach of the lease, and on October 21, 2009, Flying Pigs entered the Kinston restaurant to secure the premises. The next day, Ham's (but not Chelda) filed for Chapter 11 bankruptcy in the Eastern District of North Carolina. Exercising its right under the bankruptcy code, see 11 U.S.C. § 365(a), Ham's rejected its Kinston lease with Flying Pigs, leaving Flying Pigs to pursue recourse solely from Chelda.

---

[1] The litigation culminating in this appeal involves proceedings in myriad North Carolina state and federal courts. Two of the state lawsuits originated in Guilford County, and the third in Lenoir County. One of the Guilford County suits was removed to the Middle District of North Carolina, and the case at bar, as we have noted, was removed from Lenoir County to the Eastern District of North Carolina. Ham's bankruptcy proceedings were likewise administered in the Eastern District.

To that end, Flying Pigs sued Chelda on March 12, 2010, in the Superior Court of Guilford County. On July 6, 2010, Flying Pigs obtained a default judgment against Chelda in excess of $567,000. The lion's share of the judgment was attributed to Chelda's obligations through the remaining term of the Kinston lease, less any rents received in mitigation. In order to effectuate at least partial satisfaction of the default judgment, Flying Pigs sought an equitable lien against two federally registered trademarks, and their associated goodwill, which had been registered by Chelda but used exclusively by Ham's (the "intellectual property"). On July 30, 2010, the Guilford County court granted Flying Pigs's request in that regard, imposing an equitable lien on — and authorizing the judicial sale of — the intellectual property. That very day, Flying Pigs registered a notice of its equitable lien with the United States Patent and Trademark Office ("PTO").

Meanwhile, the Ham's bankruptcy proceedings moved forward. A Greensboro entity called RCR Marketing, LLC, bid $360,000 in the Chapter 11 proceedings for

> all of [Ham's] assets, property and rights, tangible and intangible, including without limitation . . . equipment, furniture, fixtures . . . goodwill, trademarks, licenses (including but not limited to any rights and/or licenses to the name 'Ham's Restaurant' and all related trademarks) and all other intellectual property.

4

J.A. 119. The assets of Ham's were to be sold in "as is" condition, "without any warranties, express or implied, including without limitation any warranties concerning title, merchantability, or fitness." Id. On August 3, 2010, the bankruptcy court approved the sale of Ham's assets to RCR, converting the Chapter 11 matter to a Chapter 7 liquidation proceeding. Consistent with the bankruptcy court's order, the parties scheduled the bankruptcy sale for closing on August 19, 2010.

On the morning of the bankruptcy sale's closing, however, the Bank of North Carolina ("BNC") filed suit in Guilford County against RCR and Chelda. Throughout the Ham's bankruptcy proceedings, BNC had asserted that it held a perfected security interest in Chelda's personal property, including its equipment and trademarks, and that Chelda — rather than Ham's — was the actual owner of a substantial portion of the assets RCR purported to have purchased from the bankruptcy estate.[2] Thus, BNC's Guilford County lawsuit sought to prevent RCR's imminent

---

[2] BNC's alleged security interest in Chelda's property derived from a $3.5 million dollar commercial loan Chelda obtained in 2004 and refinanced through BNC in 2006. The promissory note appurtenant to the 2006 loan was secured by a lien on certain of Chelda's assets, including most of the machinery and equipment used at the Ham's restaurants. The intellectual property was not specifically included within BNC's lien.

and allegedly unauthorized appropriation of Chelda's property, including the intellectual property.  That same morning, the Guilford County court awarded a temporary restraining order ("TRO") enjoining RCR and Chelda's use of the equipment and the intellectual property.  Nonetheless, on the Bankruptcy Trustee's advice and insistence, the closing of the bankruptcy sale of Ham's assets to RCR proceeded as scheduled.[3]

On August 27, 2010, RCR removed BNC's Guilford County suit to the Middle District of North Carolina.  By March 11, 2011, BNC, Chelda, and RCR had agreed to compromise and settle all their claims and disputes, pursuant to which the district court entered an order dismissing the BNC lawsuit with prejudice. Although the terms of the compromise and settlement are not of record here, it led to the following events:  (1) on March 16, 2011, the PTO recorded an assignment of the intellectual property from Chelda to RCR, effective March 3, 2011; (2) then, on June 15, 2011, BNC released its security interest in the intellectual property; and (3) finally, on September 19, 2011, RCR assigned the intellectual property to its sister entity, defendant-appellee RRAJ Franchising, LLC.

---

[3] The Bankruptcy Trustee took the position that the Guilford County TRO contravened the automatic stay imposed by federal law, see 11 U.S.C. § 362, and was void ab initio.  See J.A. 116.

6

Thereafter, on December 12, 2012, Flying Pigs filed the complaint underlying this appeal against RRAJ Franchising in the Superior Court of Lenoir County, seeking to foreclose on its equitable lien against the intellectual property, to subject that property to a judicial sale, and to enjoin RRAJ from any further use thereof in connection with operations of the Ham's restaurants. On January 17, 2013, RRAJ removed the Lenoir County case to the Eastern District of North Carolina, characterizing the complaint therein as a "dispute over two trademarks held and registered pursuant to the Federal Lanham Act." J.A. 7.

On February 25, 2013, RRAJ Franchising moved in the district court to dismiss the Flying Pigs complaint on the ground that the settlement of BNC's Guilford County lawsuit — to which Flying Pigs was not a party — nonetheless barred the foreclosure action under the principles of res judicata. The next day, Flying Pigs moved to remand the Lenoir County lawsuit to state court, asserting a lack of federal jurisdiction. On August 14, 2013, the district court conducted a hearing on the respective motions. On August 22, 2013, the court entered its Dismissal Order, denying the remand requested by Flying Pigs and granting RRAJ's Rule 12(b)(6) motion to dismiss on the basis of res judicata. On September 13, 2013, Flying Pigs filed a timely

7

notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Flying Pigs maintains on appeal that the district court erred in denying its motion to remand, asserting that its Lenoir County complaint alleges a state law cause of action and does not, on its face, present any federal question sufficient to invoke federal jurisdiction.[4] RRAJ Franchising, on the other hand, contends that its removal of the Lenoir County case to federal court was proper because an adjudication of Flying Pigs's complaint requires the application of federal trademark law.[5]

Inasmuch as Flying Pigs and RRAJ Franchising are North Carolina entities, the jurisdiction of the district court was entirely dependent upon the existence of a federal question. See 28 U.S.C. § 1441(a) (authorizing removal to district court of any state court civil action "of which the district courts of

---

[4] Flying Pigs also contends on appeal that the district court erred in granting the dismissal sought by RRAJ Franchising. In light of our jurisdictional ruling, we need not reach or decide whether the court erred in that regard.

[5] We review de novo a district court's denial of a motion to remand to state court. See Hoschar v. Appalachian Power Co., 739 F.3d 163, 169 (4th Cir. 2014).

8

the United States have original jurisdiction"); id. at § 1331 (providing for original jurisdiction in the district courts of "all civil actions arising under the Constitution, laws, or treaties of the United States"). In deference to federalism concerns, we are obliged to "strictly construe" § 1441 and ensure that any claim alleged to afford a basis for federal jurisdiction indeed arises under federal law. See Pinney v. Nokia, Inc., 402 F.3d 430, 441 (4th Cir. 2005) (concluding that district court lacked "arising under" jurisdiction over state tort claims potentially implicating federal regulations). In this regard, the "well-pleaded complaint rule" demands that we confine our inquiry to the "plaintiff's statement of his own claim . . . unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." Christianson v. Colt Indus. Operating Corp. 486 U.S. 800, 809 (1988).

A civil action can "arise under" federal law in two ways. Most commonly, "a case arises under federal law when federal law creates the cause of action asserted." Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013) (citing Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916)). In this proceeding, however, the effort of Flying Pigs to foreclose on the equitable lien awarded by the Guilford County court is manifestly a cause of action created by state law. See Fulp v. Fulp, 140 S.E.2d

9

708, 711-13 (N.C. 1965) (describing circumstances from which equitable lien can arise under North Carolina Law); Winborne v. Guy, 22 S.E.2d 220, 223 (N.C. 1942) (explaining that, in North Carolina, "[a] suit in equity to foreclose is the proper remedy" to enforce an equitable lien). Thus, we must determine the presence or absence of federal question jurisdiction under the second, more narrow basis applicable only to a state-law cause of action implicating a "significant" federal issue. See Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005) (citation omitted). In recent years, the Supreme Court has brought greater clarity to what it describes as a traditionally "unruly doctrine," emphasizing its "slim contours." See Gunn, 133 S. Ct. at 1065. Among other prerequisites for "significance," the federal issue must have been "necessarily raised" in the litigation. Id. (citing Grable).

On appeal, RRAJ Franchising maintains that Flying Pigs's Lenoir County complaint necessarily raises a significant federal issue because Flying Pigs cannot prevail in its foreclosure action without resorting to the Lanham Act.[6] In particular, RRAJ

---

[6] The Lanham Act, codified in Title 15 of the United States Code, contains most of the federal statutes concerning federal trademark law. Among other matters, it governs trademark registration, infringement, and dilution.

argues that Flying Pigs must rely on the Lanham Act to establish that Chelda owned the intellectual property subject to the equitable lien when it was imposed by the Guilford County court.[7] We are constrained to reject that contention. The subject order of July 30, 2010, relied on the court's implicit finding (based on the PTO registration) that Chelda then owned the intellectual property. The Lenoir County lawsuit is nothing more than an action to enforce that equitable lien — which has not been appealed, modified, or challenged in any forum. It appears entirely unnecessary, therefore, for Flying Pigs to again prove its entitlement to the equitable lien it seeks to enforce in the Lenoir County court.

Moreover, assuming that Flying Pigs were required to reestablish Chelda's ownership of the intellectual property in order to make a prima facie case in the Lenoir County lawsuit, we are yet unconvinced that a significant federal issue would be necessarily raised. Our conclusion is supported by the settled

---

[7] It appears that RRAJ would defend the Lenoir County lawsuit by interposing the affirmative defense that Chelda abandoned any beneficial ownership interest in the intellectual property prior to the imposition of the equitable lien. It is well established, however, that "'a case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.'" See Pinney, 402 F.3d at 443 (quoting Franchise Tax Bd. of Cal. v. Constr. Laborer's Vacation Trust, 463 U.S. 1, 14 (1983)).

11

proposition that "[t]rademark ownership is not acquired by federal or state registration. Ownership rights flow only from prior use[.]" 2 J. Thomas McCarthy, McCarthy On Trademarks and Unfair Competition § 16:18 (4th ed. 2013) (collecting cases). Registration of a trademark under the Lanham Act merely "helps in this regard, as registration is prima facie evidence that the registrant is the owner of the mark." George & Co., LLC v. Imagination Entm't Ltd., 575 F.3d 383, 400 n.15 (4th Cir. 2009) (citing 15 U.S.C. § 1057(b)). Thus, Flying Pigs could well argue that Chelda owned the intellectual property simply by virtue of its use. See, e.g., id. at 400 (trademark ownership exists, regardless of registration, "so long as a person is the first to use a particular mark to identify his goods in a given market, and so long as that owner continues to make use of the mark"). As we have recognized, "a plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when every legal theory supporting the claim requires the resolution of a federal issue." See Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (en banc). Accordingly, the "necessarily raised" requirement for a "significant" federal issue — formulated and explained by the Supreme Court in Grable and Gunn — has not been satisfied.[8]

---

[8] To serve as an adequate basis of federal question
(Continued)

12

The disposition of this appeal is also consistent with our circuit precedent concerning "arising under" federal jurisdiction pursuant to 28 U.S.C. § 1331. In the aforementioned Pinney case, the plaintiffs had filed tort claims in state courts against numerous manufacturers of communications equipment whose cell phones were alleged to emit unsafe levels of radio frequency radiation. The lawsuits were removed to the federal district court and consolidated, where the plaintiffs' motion to remand was denied on the ground that the defendants would interpose their compliance with federal standards and argue that the claims were preempted. On consideration of the plaintiffs' appeal, Judge Michael carefully explained that, under such circumstances, "'[t]he most one can say is that a question of federal law is lurking in the background,' . . . but that does not make the claims into ones arising under federal law." 402 F.3d at 446 (quoting Gully v. First Nat'l Bank, 299 U.S. 109, 117 (1936)).

---

jurisdiction, a federal issue implicated by a state law cause of action must also be "actually disputed," "substantial," and "capable of resolution in a federal court without disrupting the federal-state balance" of power. See Gunn, 133 S. Ct. at 1065 (citing Grable). Inasmuch as the foreclosure proceeding in Lenoir County does not necessarily raise the Lanham Act issue identified by RRAJ Franchising, we need not address these three other prerequisites.

13

Similarly, in our earlier decision in <u>Gibraltar, P.R., Inc.</u> <u>v. Otoki Group, Inc.</u>, 104 F.3d 616 (4th Cir. 1997), we concluded that a lawsuit contesting trademark ownership among joint venture participants was properly dismissed for lack of a sufficient federal question, admonishing that "[t]he Lanham Act does not confer jurisdiction simply because the subject in dispute is a trademark." <u>Id.</u> at 619. Judge Wilkinson recognized that the matter was "not a Lanham Act case; it [was] a simple contract case. It pos[ed] not a question of infringement, but a question of ownership." <u>Id.</u> The same result obtains here. Flying Pigs has not filed a complaint arising under the Lanham Act; it has initiated a foreclosure proceeding in Lenoir County to enforce an equitable lien under North Carolina law, and we are bound to respect the state court lawsuit as such. Under these circumstances, the remand motion of Flying Pigs should have been granted and this proceeding returned to the state court.

## III.

Pursuant to the foregoing, we vacate the judgment of the district court and remand for the return of this litigation to the Superior Court of Lenoir County, which will conduct such other and further proceedings as may be appropriate.

<u>VACATED AND REMANDED</u>

14