**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 15-1484**

———————

COMMONWEALTH OF VIRGINIA ex rel. HUNTER LABORATORIES,
L.L.C.; COMMONWEALTH OF VIRGINIA ex rel. CHRIS RIEDEL, an
individual,

Plaintiffs – Appellants,

v.

COMMONWEALTH OF VIRGINIA,

Plaintiff – Appellee,

and

LABORATORY CORPORATION OF AMERICA, a Delaware corporation;
LABORATORY CORPORATION OF AMERICA HOLDINGS, a Delaware
corporation; DOES 10 THROUGH 100, INCLUSIVE; QUEST
DIAGNOSTICS NICHOLS INSTITUTE, f/k/a Quest Diagnostics,
Incorporated, a California corporation; QUEST DIAGNOSTICS
CLINICAL LABORATORIES, INC.; SPECIALTY LABORATORIES, INC.,
a California corporation; QUEST DIAGNOSTICS, INCORPORATED,
a Delaware corporation; UNITED STATES OF AMERICA,

Defendants.

———————

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria. Gerald Bruce Lee, District
Judge; Anthony J. Trenga, District Judge. (1:13-cv-01129-GBL-
TCB)

———————

Argued: May 10, 2016                    Decided: July 7, 2016

———————

Before MOTZ, KING, and HARRIS, Circuit Judges.

———————

Vacated and remanded by published opinion. Judge King wrote the opinion, in which Judge Motz and Judge Harris joined.

———————————

**ARGUED:** Eric James Buescher, COTCHETT, PITRE & MCCARTHY, LLP, Burlingame, California, for Appellants. Candice Mae Deisher, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Justin T. Berger, COTCHETT, PITRE & MCCARTHY, LLP, Burlingame, California, for Appellants. Mark R. Herring, Attorney General of Virginia, Adele M. Neiburg, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

———————————

KING, Circuit Judge:

In December 2007, qui tam relators Hunter Laboratories, L.L.C., and Chris Riedel (the "relators") filed this civil action in the Circuit Court of Fairfax County against multiple medical laboratory businesses. The complaint alleged that the medical laboratories had submitted false claims to the Commonwealth of Virginia for Medicaid reimbursement, in contravention of the Virginia Fraud Against Taxpayers Act (the "VFATA"). The defendants removed the action to the Eastern District of Virginia, and the relators (the appellants here) and the Commonwealth (the appellee here) thereafter entered into a settlement agreement with certain of the defendants. In April 2015, the district court awarded the relators a share of the settlement proceeds. On appeal, the relators contend that the court's award was insufficient under the VFATA. We are unable to reach that issue, however, because the district court lacked subject matter jurisdiction over the qui tam action. As explained below, we vacate and remand for a remand to the state court.

I.

Before turning to the facts of this case, we explain some pertinent aspects of the Medicaid program. Established in 1965, the Medicaid program "provides joint federal and state funding

3

of medical care for individuals who cannot afford to pay their own medical costs." See Ark. Dep't of Health & Human Servs. v. Ahlborn, 547 U.S. 268, 275 (2006). Although state participation in Medicaid is voluntary, a state seeking federal funds for Medicaid must first submit a "plan[] for medical assistance" to the Secretary of Health and Human Services (the "Secretary"). See 42 U.S.C. § 1396-1.

The Commonwealth of Virginia participates in the Medicaid program, and Virginia law authorizes the Commonwealth's aptly named Department of Medical Assistance Services (the "DMAS") to "submit to the [Secretary] a state plan for medical assistance services." See Va. Code Ann. § 32.1-325(A). Pursuant thereto, DMAS is obliged to "[m]ake, adopt, promulgate and enforce such regulations as may be necessary" to carry out the Commonwealth's plan for Medicaid services. Id. § 32.1-325(B)(3). DMAS also receives and processes Medicaid reimbursement claims submitted by healthcare service providers. See, e.g., Dep't of Med. Assistance Servs. v. Beverly Healthcare of Fredericksburg, 601 S.E.2d 604, 606 (Va. 2004) (explaining that DMAS determines "reimbursement rates for providers of nursing home services to Medicaid recipients").

4

A.

Under Virginia law a relator may institute — "for the person and for the Commonwealth" — a qui tam civil action alleging violations of the VFATA. See Va. Code Ann. § 8.01-216.5(A).[1] On December 19, 2007, the relators filed the qui tam complaint in this case under seal in the Circuit Court of Fairfax County. See Virginia ex rel. Hunter Labs., L.L.C. v. Quest Diagnostics, Inc., No. 1:13-cv-01129 (E.D. Va. Sept. 9, 2013), ECF No. 1-2 (the "Complaint"). The Complaint alleged that the defendant medical laboratories violated the VFATA in two ways: by presenting false claims, in contravention of Va. Code Ann. § 8.01-216.3(A)(1); and by making or using false records or statements to obtain payment or approval of false claims, in violation of Va. Code Ann. § 8.01-216.3(A)(2). As relief, the Complaint sought damages, civil penalties, costs, and other appropriate relief as provided by Virginia law.

In support of the VFATA claims, the Complaint alleged that the defendants "made false claims for payment of Medicaid-covered laboratory tests by falsely representing that the fees being charged were no greater than the maximum fees payable

---

[1] The term "qui tam" is "short for the Latin phrase qui tam pro domino rege quam pro se ipso in hac parte sequitur, which means 'who pursues this action on our Lord the King's behalf as well as his own.'" See Vt. Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. 765, 768 n.1 (2000).

pursuant to Virginia regulations." See Complaint ¶ 6 (relying on 12 Va. Admin. Code 30-80-30). More specifically, the relators alleged that, "[d]espite Commonwealth regulations," the various defendants offered deep discounts for certain services to "induce" physicians, hospitals, and other healthcare providers to rely on one of the defendants' facilities for most or all of their testing needs. See id. ¶ 24. The relationships thereby established would generate "pull through" referrals of testing for patients covered by Medicaid, see id., for which the defendants would substantially overbill DMAS when submitting their reimbursement claims, see id. ¶¶ 30-31. In so doing, the Complaint maintained, the defendants falsely "represented that their fees complied with Commonwealth Medicaid regulations." Id. ¶ 31.

In addition to alleging that the defendants' "pull through" practices violated the Commonwealth's Medicaid regulations, the Complaint maintained that those practices were "independently unlawful as kickback schemes, strictly prohibited by Federal health care programs pursuant to 42 U.S.C. § 1320a-7b(b)(2)(A)." See Complaint ¶ 28. The relators emphasized that the "discounts and overcharges described [in the Complaint] are all the more egregious," because the defendant medical laboratories knew that federal law prohibits such kickbacks. Id. The Complaint failed to allege, however, that any violations of the federal anti-

6

kickback statute rendered the reimbursement claims false under the VFATA. Indeed, the relators did not seek relief predicated on violations of federal law.

B.

About five years after the qui tam Complaint was filed, the Commonwealth declined to intervene in the matter.[2] In August 2013, the Fairfax County court unsealed the Complaint, and the relators proceeded to litigate their claims. In September 2013, the defendants removed the action from the state court in Fairfax County to the federal court in the Eastern District of Virginia, asserting that the VFATA claims arose under federal law, pursuant to 28 U.S.C. § 1331.

In support of removal to the district court, the defendants insisted that the Complaint alleged "a federal 'pull through' theory of liability that hinges entirely on the interpretation and application of federal law." See J.A. 21 ¶ 7.[3] More specifically, the defendants suggested that the relators had alleged practices that, if proven, constituted "'independently

_____

[2] The VFATA requires that a qui tam complaint first be filed under seal, without service on the defendants, to allow the Commonwealth to investigate the allegations and determine whether to intervene, i.e., litigate the lawsuit on its own behalf. See Va. Code Ann. § 8.01-216.5.

[3] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

7

unlawful' violations of the federal Anti-Kickback Statute, which rendered subsequent claims for payment submitted to Virginia 'false,' and thus actionable under the VFATA." Id. (citation omitted). In other words, the defendants maintained that, because the relators were obliged to show violations of federal law under the "'pull through' theory to prove all required elements of the corresponding VFATA claims," those claims arose under federal law. Id. at 23 ¶ 11 (footnote omitted). The relators did not challenge the removal to federal court or seek to remand the proceeding to state court, and the issue of subject matter jurisdiction was never litigated in the district court.[4]

In May 2014, the district court dismissed with prejudice all claims against defendants Laboratory Corporation of America and Laboratory Corporation of America Holdings. On September 25, 2014, the relators, the Commonwealth, and the remaining four defendants — (1) Quest Diagnostics Incorporated; (2) Quest Diagnostics Nichols Institute, f/k/a Quest Diagnostics, Inc.; (3) Quest Diagnostics Clinical Laboratories, Inc.; and

---

[4] After removal, the district court dismissed the initial qui tam Complaint under Rule 12(b)(6) and the relators filed their First Amended Complaint. At oral argument in this appeal, both the relators and the Commonwealth conceded that the initial Complaint — operative at the time of removal — must show subject matter jurisdiction in order for the lawsuit to be properly litigated in federal court.

(4) Specialty Laboratories, Inc. (the "settling defendants") — finalized a settlement agreement in this case (the "Agreement").[5] Pursuant thereto, the parties agreed that — in exchange for, inter alia, dismissal with prejudice of the claims against the settling defendants — those defendants would pay $1,250,000 to the Commonwealth, and that the Commonwealth would then pay the relators "a percentage of the applicable proceeds in an amount to be negotiated." See J.A. 139.[6] The Agreement provides that it is governed by Virginia law and that "venue for addressing and resolving any and all disputes relating to th[e] Agreement shall be the state courts of appropriate jurisdiction of [Virginia]." Id. at 146.

Shortly after the parties finalized the Agreement, the Attorney General of Virginia requested the district court to approve the sum of $138,925.34 as the relators' share of the settlement proceeds.[7] The relators opposed the Commonwealth's

---

[5] None of the named defendants is a party to this appeal.

[6] Under Virginia law, if the Commonwealth declines to intervene in a qui tam action and the matter is later settled, the qui tam relator is entitled to a share that is "not less than twenty-five percent and not more than thirty percent of the proceeds of the . . . settlement." See Va. Code Ann. § 8.01-216.7(B).

[7] Although the Commonwealth declined to intervene when this litigation was pending in state court, the Attorney General appeared on behalf of the Commonwealth on September 26, 2014, when he moved the district court for disbursement of the (Continued)

9

motion concerning their share of the settlement proceeds, insisting that the share proposed by the Attorney General was not sufficient and that they were entitled to $350,000. In April 2015, the district court entered an order approving the Commonwealth's proposal, awarding the relators $138,925.34 as their share of the settlement proceeds. See Virginia ex rel. Hunter Labs., L.L.C. v. Quest Diagnostics, Inc., No. 1:13-cv-01129 (E.D. Va. Apr. 22, 2015), ECF No. 121.

The relators have timely noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.[8] On April 21, 2016, prior to oral argument of the appeal, we sought supplemental briefing on whether the district court had possessed subject matter jurisdiction. By their supplemental briefs, the relators

---

relators' share of the settlement proceeds. The propriety of the Commonwealth as a party-litigant in these proceedings is not contested.

[8] We observe that it is questionable whether the district court's April 2015 order was a "final decision[]," see 28 U.S.C. § 1291, when the relators noted their appeal on April 29, 2015. We are satisfied, however, that any defect in that regard was cured when the court dismissed the claims against the settling defendants on May 29, 2015, as there were no other pending claims in the action at that time. See, e.g., Harbert v. Healthcare Servs. Grp., Inc., 391 F.3d 1140, 1146 (10th Cir. 2004) (recognizing that "an otherwise nonfinal decision becomes final and appealable if the district court adjudicates all remaining claims against all remaining parties before the appellate court acts to dismiss the appeal").

10

and the Commonwealth assert that subject matter jurisdiction was proper in the district court.

## II.

The recognized limits on jurisdiction in the federal courts "define the very foundation of judicial authority." See United States v. Wilson, 699 F.3d 789, 793 (4th Cir. 2012). As such, "[e]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." See Rice v. Rivera, 617 F.3d 802, 807 (4th Cir. 2010) (per curiam) (internal quotation marks omitted); Wilson, 699 F.3d at 793 (explaining that "a lack of subject matter jurisdiction cannot be waived or forfeited"). Our review of subject matter jurisdiction is de novo. See Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 815-16 (4th Cir. 2004) (en banc).

## III.

### A.

Section 1331 of Title 28 confers on the federal district courts "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States." With exceptions not relevant here, an action initiated in a state court — over which a federal district court would possess original jurisdiction —

may be removed to the appropriate district court. See 28 U.S.C. § 1441(a). As a general proposition, therefore, an action initially filed in state court may be removed to federal district court if one or more of the claims asserted arises under federal law.

The determination of whether a claim arises under federal law for purposes of 28 U.S.C. § 1331 requires the application of "the well-pleaded complaint rule." See Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th Cir. 2005). Pursuant thereto, the federal court may examine only that which "necessarily appears in the plaintiff's statement of his own claim" in assessing whether there is jurisdiction over the action. See Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 10 (1983) (internal quotation marks omitted).

Under the well-pleaded complaint rule, as the Supreme Court has explained, "a case can 'aris[e] under' federal law in two ways." See Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013). First, "a case arises under federal law when federal law creates the cause of action asserted." Id. Second, as relevant here, § 1331 confers jurisdiction over a "special and small category" of claims that originate in "state rather than federal law." Id. at 1064-65 (internal quotation marks omitted). In such situations, as the Court has recognized, "arising under" jurisdiction will only exist over a state-law claim if a

12

"federal issue" is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Id. at 1065 (relying on Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005)).

We adhered to the Court's four-part Grable test in our recent decision in Flying Pigs, L.L.C. v. RRAJ Franchising, L.L.C., 757 F.3d 177 (4th Cir. 2014). There, the plaintiff sought to enforce — under state law and in state court — an equitable lien against certain trademarks with disputed ownership. The defendant removed the case to the federal district court, insisting that applying federal law was required in order to resolve the trademark ownership dispute. As we observed, however, "a plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when every legal theory supporting the claim requires the resolution of a federal issue." Id. at 182 (quoting Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (en banc)). Trademark ownership, we explained, "is not acquired by federal or state registration," but instead derives "only from prior use." Id. (internal quotation marks omitted). Thus, although federal registration of a trademark is "prima facie evidence that the registrant is the owner of the mark," such registration is

13

neither necessary nor sufficient to establish ownership.  Id. (internal quotation marks omitted).  Because a federal issue was not "necessarily raised," as required by the Court's Grable decision, we rejected the proposition that the plaintiff's state-law claim arose under federal law.  Id. at 182-83.

B.

With the foregoing principles in mind, we turn to the parties' contentions regarding subject matter jurisdiction. Both the relators, as appellants, and the Commonwealth, as appellee, maintain that the VFATA claims fall into the "special and small category" of state-law claims that actually arise under federal law.  That is so, according to the relators, because resolving whether the defendant medical laboratories contravened the federal anti-kickback statute is "determinative of the cause of action under VFATA, as claims tainted by kickbacks that are submitted to Medicaid are false."  See Supp. Br. of Appellants 5-6.  The Commonwealth, for its part, broadly asserts that "[f]ederal issues are always raised with respect to claims involving Medicaid, including claims under the VFATA," because Medicaid is "a joint federal-state program."  See Supp. Br. of Appellee 4-5.

Applying the well-pleaded complaint rule in this situation demonstrates that, without question, federal law does not create any cause of action that is asserted in the Complaint.

14

Furthermore, the relators' VFATA claims fail at Grable's first prong, because those claims do not "necessarily raise" any federal issue.  Indeed, to prove the "pull through" theory — the defendants' basis for removal to federal court — the relators need only show, as pleaded in the Complaint, that the defendants contravened the Commonwealth's Medicaid regulations; namely, by undercharging for certain services in order to induce Medicaid referrals, and then overcharging the Commonwealth when providing those same services to referred Medicaid recipients.  See, e.g., Complaint ¶¶ 7, 23-25.  The corresponding Medicaid reimbursement claims that the defendants submitted to DMAS were false, according to the Complaint, because charging Medicaid recipients higher fees than other clients "violated DMAS regulations."  See id. ¶¶ 29-37.

As the Supreme Court recently explained in a similar context, a plaintiff pursuing a "state-law action for breach of contract" could allege, "for atmospheric reasons," that the defendant's conduct also contravened federal law.  See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning, 136 S. Ct. 1562, 1568 (2016); id. at 1574-75 (extending Grable test for § 1331 "arising under" jurisdiction to alleged violations of Section 27 of the Securities Exchange Act of 1934).  Such a "hypothetical suit" would not arise under federal law, however, "because the plaintiff can get all the relief he seeks just by showing the

15

breach of an agreement," without proving that the defendant violated federal law.  Id. at 1569; accord Flying Pigs, 757 F.3d at 182 (recognizing that every theory of relief must raise federal issue for claim to arise under federal law).  In other words, the hypothetical breach-of-contract suit "can achieve all it is supposed to," even if issues of federal law "never come up."  See Merrill Lynch, 136 S. Ct. at 1569.

The Court's hypothetical suit in Merrill Lynch further undermines the contention of the parties to this appeal that subject matter jurisdiction was present in the district court proceedings.  By the plain terms of the Complaint, the relators could have prevailed on their VFATA claims by proving that the defendants contravened the Commonwealth's Medicaid regulations, without showing any violation of federal law.  The mere fact that the Virginia Medicaid program is jointly funded by the federal government and the Commonwealth is not sufficient to satisfy Grable's first prong, and that fact does not make a federal case out of every Medicaid dispute.  Put succinctly, the Complaint's VFATA claims do not necessarily raise any federal issue, and thus do not arise under federal law.[9]

---

[9] Because the first prong of Grable is not satisfied, we need not address the other parts of that test.  See Flying Pigs, 757 F.3d at 183 n.8.

16

IV.

Pursuant to the foregoing, we vacate the judgment and remand for the district court to remand to the Circuit Court of Fairfax County.

VACATED AND REMANDED

17